# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LETICIA ANAYA, | 1:10-cv-01812 AWI GSA |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | |
| MICHAEL ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

## BACKGROUND

Plaintiff Leticia Anaya ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income benefits pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Gary S. Austin, for findings and recommendations to the District Court.

//

//

1

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed an application for benefits on March 21, 2000, alleging disability as of December 29, 1999.  AR 156-159.  Plaintiff's application was denied initially and on reconsideration; she then requested a hearing before an Administrative Law Judge ("ALJ").  AR 59-62, 66-70.  Thereafter, following two previous unfavorable decisions in 2001 and 2003,[2] and two remand orders by the Appeals Council, ALJ Howard K. Treblin held a third hearing and subsequently issued an order denying benefits on February 7, 2008, finding Plaintiff was not disabled.  AR 24-34.  On July 30, 2010, the Appeals Council denied review of the 2008 decision.  AR 8-10.

### 2006 Hearing Testimony

ALJ Treblin held a hearing on August 24, 2006, in Stockton, California.  Plaintiff appeared and testified with the aid of an interpreter; she was assisted by attorney Gina Fazio.  Vocational Expert ("VE") George Meyers also testified.  AR 700-718.

Born November 1, 1960, Plaintiff was forty-five years old on the date of the hearing.  AR 703.  She is five feet, two inches tall and weighs 230 pounds.  AR 703.  She lives with her husband and two children; her husband supports the family.  AR 709.

Although Plaintiff has a driver's license, she is unable to drive because she becomes dizzy and unfocused.  One of her physician's advised her not to drive, although the Department of Motor Vehicles has not moved to take her license.  AR 704.  Her husband drove her to the hearing.  AR 704.  When Plaintiff was asked when she last drove, she indicated she had driven the day prior to the hearing.  When asked how often she did so, Plaintiff indicted she drives her children to school only "two blocks away."  AR 711.

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[2] Plaintiff has twice been denied benefits following prior administrative proceedings.  *See* AR 42-57, 80-90.  The Appeals Council remanded both matters for further proceedings.  AR 59–61, 94-96.

When asked to identify the last grade in school she completed, Plaintiff indicated that she completed junior high school in Mexico. She can read "very little" English and can write "[a] little" English AR 704. Further, she can speak a "little" English but understands "very little." AR 704-705. She can add, subtract, multiply and divide. AR 705.

Plaintiff last worked in 1999, for about four months, sorting almonds.[3] Prior to that position, she worked in a winery. AR 705. Plaintiff stopped working due to headaches, hospitalization, and problems with her chest, arms, back, knees and feet. AR 705.

With specific regard to seizures, Plaintiff reported that she continues to have seizures two to three times per week. AR 705-706. When she was asked to describe the seizures, Plaintiff indicated they "start with strong headaches," then her body trembles, and she becomes tired, weak and nauseous. The seizure itself lasts "seconds," but she is tired and unable to walk for as long as a week thereafter. AR 706. Plaintiff takes medications to treat this condition as prescribed and the medications do help. AR 706. While approximately two years ago Plaintiff's seizure condition had begun to improve, it is now worsening. AR 712. Additionally, Plaintiff suffers from depression; however, she does not take medication related to this condition. AR 706.

Plaintiff sees her doctor twice a month. AR 706. She has more bad days than good days. AR 707. With regard to her complaints of pain, Plaintiff takes Propranolol, Celebrex and Vicodin. She has been taking Vicodin three times a day for the previous six months. AR 707. Aside from an allergic reaction to Tegretol and potential weight gain from Depakote, Plaintiff's side effects from prescription medication include nausea and dizziness. AR 707-708.

When she was asked whether she does anything throughout the day that makes her feel better, Plaintiff indicated she feels better with rest. AR 708. More particularly, Plaintiff will rest for a half hour or an hour, four times a day, for a total of two to four hours per day. AR 708. Cold, heat, odors and light can make her feel worse. AR 708. Dust, cleansers and anxiety

---

[3]The transcript reads "sorting elements," however, this is plainly a transcription error. *See also* AR 30.

1   negatively affect her breathing.  AR 711-712.  She believes her condition has worsened rather

2   than improved.  AR 708.

3       Plaintiff can lift and carry five to ten pounds, but her "arms hurt a lot."  AR 708.  She has

4   difficulty using her hands because "they hurt."  AR 709.  Plaintiff can sit for about one hour.  AR

5   708-709.  She cannot walk much because "when [she] gets agitated, [her] head hurts."  Plaintiff

6   estimated she could walk about ten minutes.  AR 709.  She can stand for about an hour.  She has

7   difficulty bending.  AR 709.  Further, Plaintiff has difficulty with concentration, focus and

8   memory, and also has difficulty getting along with others.  AR 709.  Plaintiff does not sleep well,

9   getting about four to five hours of sleep per night.  She does not wake feeling rested.  AR 709-

10  710.

11      Plaintiff denied any difficulty seeing to her personal needs.  AR 710.  When she gets up

12  in the morning, she cleans herself up, wakes up the children, and helps them get ready for school.

13   AR 710.  She does cook, but her husband helps her with cleaning on the weekends.  AR 710.

14  Plaintiff does the laundry and washes the dishes.  She cannot grocery shop without assistance.

15  AR 710. After cooking, Plaintiff will watch television with her children and get them ready for

16  the next school day.  AR 711.

17      When asked whether she had any hobbies or activities she used to enjoy but is no longer

18  able to do, Plaintiff indicated that she used to enjoy painting ceramic animal figurines but she can

19  no longer do so.  AR 711.

20      After Plaintiff testified to having "some testing" in June and being advised that she

21  suffered "a stroke [or] malfunction in [her] brain," the ALJ left the record open to ensure

22  Plaintiff's counsel provided any relevant medical records.  *See* AR 712-713, 718; *see also* AR

23  613 (May 2008 brain scan).

24  //

25  //

26  //

27

28                                      4

VE George Meyers described Plaintiff's past work as that of a sorter, DOT[4] 529.687-186, light and unskilled with an SVP[5] of 2, and bottle line attendant, DOT 920.687-042, light and unskilled with an SVP of 1.  AR 714.

The VE was asked to consider a hypothetical worker of Plaintiff's age, education and work history, who is able to lift and/or carry, push and/or pull, ten pounds frequently and twenty pounds occasionally, who can sit, stand, and/or walk for six hours in an eight-hour day with normal breaks, but must avoid ladders, ropes, scaffolds, and avoid exposure to hazards such as machinery and heights, and high concentration to fumes, odors, dusts, gases and poor ventilation, and who may perform unskilled work on a regular and continuous basis, with the ability to interact appropriately with supervisors, coworkers and the public, and could withstand routine changes in work situations.  AR 714-715.

VE Meyers indicated the hypothetical worker could not perform Plaintiff's past work as a result of the necessity of avoiding high concentrations of odors and gases.  AR 715. Nevertheless, the VE indicated such an individual could perform the following work: housekeeper, DOT 323.687-014, light and unskilled with an SVP of 2, with 16,000 available positions in California and 272,000 positions available nationwide; laundry worker, DOT 920.687-018, light and unskilled with an SVP of 1, with 22,000 available positions in California and 374,000 positions available nationwide; and cashier, DOT 211.462-010, light and unskilled with an SVP of 2, with about 45,000 positions available in California after a fifty-percent erosion to accommodate the educational restriction, and 725,000 positions available nationwide.  AR 716.

In a second hypothetical question, the VE was asked to consider a hypothetical worker of Plaintiff's age, education and work history, who is able to lift and/or carry twenty pounds frequently and fifty pounds occasionally, has no limitations regarding standing, walking or

---

[4]"DOT" refers to the Dictionary of Occupational Titles.

[5]"SVP" refers to Specific Vocational Preparation.

5

1   sitting, and who should never perform balancing, climbing ladders or stairs, and should avoid

2   unprotected heights, with a limitation to simple unskilled tasks with an ability to maintain an

3   acceptable persistence in pace during a forty-hour work week, and who could interact

4   appropriately with coworkers, supervisors and the public, and could withstand changes and deal

5   with routine work situations.  AR 716.  VE Meyers indicated this individual could perform

6   Plaintiff's past work as a bottle line attendant.  AR 716.  That individual could also perform other

7   work, including that of a:  warehouse worker, DOT 922.687-058, medium and unskilled with an

8   SVP of 2, with 25,000 positions available in California and 425,000 positions available

9   nationwide; hand packer, DOT 920.587-018, medium and unskilled with an SVP of 2, with

10  12,000 positions available in California and 204,000 positions available nationwide; and hospital

11  cleaner, DOT 920.687-010, medium and unskilled with an SVP of 2, eroding the base by fifty-

12  percent to accommodate language and educational concerns, for approximately 80,000 positions

13  available in California and 1.4 million positions nationwide.  AR 716-717.

14          Finally, the VE was asked to consider the following hypothetical worker

15  who is able to lift and/or carry five pounds frequently, 10 pounds on occasion,
    same with pushing and pulling, with no overhead activity, sitting for one hour at a
16  time, standing for less than one hour at a time, walking about ten minutes at a
    time, occasional bending at best.  Use of the hands in intact, marked limitations in
17  understanding and remembering, carrying out even simple tasks, marked
    limitations in dealing with others, environmental limitations of avoiding
18  unprotected heights, dangerous moving machinery, extreme heat which would be
    in excess of 90 degrees, extremely cold temperatures below 50, would need to
19  avoid odors, dusts, environmental pollutants, avoid loud noises, the full seizure
    precautions and we'd also have a limitation of no 40-hour week on a regular
20  continuous basis due to the need to take recumbent rest breaks.

21  AR 717.  VE Meyers indicated such an individual would be unable to perform Plaintiff's past

22  work or any other work.  AR 717.

23          **Medical Record**

24          The entire medical record was reviewed by the Court.  AR 210-627.  The medical

25  evidence will be referenced below as necessary to this Court's decision.

26  //

27

28                                                  6

1

**ALJ's Findings**

2   Using the Social Security Administration's five-step sequential evaluation process the

3 ALJ determined that Plaintiff did not meet the disability standard.  AR 24-34.

4   More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful

5 activity since the March 2000 application date.  AR 27.  Further, the ALJ identified proven non-

6 epileptogenic seizures, possible epileptic seizures due to neurocysticercosis, and migraine

7 headaches as severe impairments.  AR 27.  Nonetheless, the ALJ determined that Plaintiff does

8 not have an impairment or combination of impairments that meets or medically equals one of the

9 listed impairments.  AR 28-29.

10   Based on his review of the entire record, the ALJ determined that Plaintiff has the

11 residual functional capacity ("RFC") to perform simple tasks at the unskilled level, and can sit,

12 stand and walk for six hours each in an eight-hour workday with normal breaks, can lift ten

13 pounds frequently and twenty pounds occasionally, but should avoid climbing ladders, ropes, and

14 scaffolds, and avoid exposure to hazards such as moving machinery and unprotected heights, as

15 well as high concentrations of fumes, odors, dusts, gases, and poor ventilation.  AR 29-33.

16   Next, the ALJ determined that Plaintiff could not perform her past relevant work.  AR 33.

17 Nevertheless, based upon Plaintiff's age, education, work experience and RFC, the ALJ

18 determined there were jobs that existed in significant numbers in the national economy that

19 Plaintiff could perform.  Specifically, the ALJ found Plaintiff could perform the work of a

20 housekeeper, laundry worker, or cashier.  AR 33-34.  Therefore, the ALJ determined Plaintiff

21 was not disabled.  AR 34.

22

**SCOPE OF REVIEW**

23   Congress has provided a limited scope of judicial review of the Commissioner's decision

24 to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

25 this Court must determine whether the decision of the Commissioner is supported by substantial

26 evidence.  42 U.S.C. § 405 (g).  Substantial evidence means "more than a mere scintilla,"

27

28            7

1   *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v.*

2   *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

3   reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at

4   401.  The record as a whole must be considered, weighing both the evidence that supports and

5   the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993,

6   995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must

7   apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

8   This Court must uphold the Commissioner's determination that the claimant is not disabled if the

9   Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

10  substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th

11  Cir. 1987).

12  <u>**REVIEW**</u>

13          In order to qualify for benefits, a claimant must establish that he is unable to engage in

14  substantial gainful activity due to a medically determinable physical or mental impairment which

15  has lasted or can be expected to last for a continuous period of not less than twelve months.  42

16  U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of

17  such severity that he is not only unable to do her previous work, but cannot, considering his age,

18  education, and work experience, engage in any other kind of substantial gainful work which

19  exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

20  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th

21  Cir. 1990).

22          Here, Plaintiff argues that the ALJ erred by (1) improperly rejecting her testimony; (2)

23  improperly evaluating the medical evidence; (3) improperly rejecting lay witness testimony; and

24  (4) failing to meet his burden at step five.

25  *//*

26  *//*

27

28                                                          8

1

**DISCUSSION**[6]

2

### A.  *Plaintiff's Testimony*

3    Plaintiff contends the ALJ erred by improperly rejecting her testimony.  More

4 particularly, Plaintiff asserts the ALJ offered "two reasons, neither of which was clear and

5 convincing" (Doc. 16 at 8), and yet Plaintiff later argues "the ALJ rejected Plaintiff's testimony

6 generally for one primary reason - its alleged inconsistency with the medical evidence" (Doc. 16

7 at 10).  In opposition, the Commissioner replies the ALJ provided "numerous good reasons" in

8 support of his finding.  (Doc. 19 at 7-10.)

9    A two step analysis applies at the administrative level when considering a claimant's

10 subjective symptom testimony.  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  First, the

11 claimant must produce objective medical evidence of an impairment that could reasonably be

12 expected to produce some degree of the symptom or pain alleged.  *Id*. at 1281-1282.  If the

13 claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the

14 claimant's testimony regarding the severity of his symptoms only if he makes specific findings

15 that include clear and convincing reasons for doing so.  *Id*. at 1281.  The ALJ must "state which

16 testimony is not credible and what evidence suggests the complaints are not credible." *Mersman*

17 *v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001), quotations & citations omitted ("The lack

18 of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it

19 impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial

20 evidence"); Social Security Ruling ("SSR") 96-7p (ALJ's decision "must be sufficiently specific

21 to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave

22 to the individual's statements and reasons for that weight").

23

24

---

25    [6]The parties are advised that this Court has carefully reviewed and considered all of the briefs, including

26 arguments, points and authorities, declarations, and/or exhibits.  Any omission of a reference to any specific
argument or brief is not to be construed that the Court did not consider the argument or brief.

27

28                                    9

An ALJ can consider many factors when assessing the claimant's credibility.  *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  The ALJ can consider the claimant's reputation for truthfulness, prior inconsistent statements concerning his symptoms, other testimony by the claimant that appears less than candid, unexplained or inadequately explained failure to seek treatment, failure to follow a prescribed course of treatment, claimant's daily activities, claimant's work record, or the observations of treating and examining physicians. *Smolen*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d 625, 638 (2007).  "An ALJ is not 'required to believe every allegation of disabling pain' or other non-exertional impairment." *Orn v. Astrue*, 495 F.3d at 635 (citation omitted).

The first step in assessing Plaintiff's subjective complaints is to determine whether Plaintiff's condition could reasonably be expected to produce the pain or other symptoms alleged. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).  Here, the ALJ found that Plaintiff's severe impairments could reasonably be expected to produce the symptoms alleged. AR 31.  This finding satisfied step one of the credibility analysis. *Smolen*, 80 F.3d at 1281-1282.

"Despite the inability to measure and describe it, pain can have real and severe debilitating effects; it is, without a doubt, capable of entirely precluding a claimant from working." *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989).  It is possible to suffer disabling pain even where the degree of pain is unsupported by objective medical findings. *Id*.  "In order to disbelieve a claim of excess pain, an ALJ must make specific findings justifying that decision." *Id*. (citing *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989)).  The findings must convincingly justify the ALJ's rejection of the plaintiff's excess pain testimony. *Id*. at 602. However, an ALJ cannot be required to believe every allegation of disabling pain.  "This holds true even where the claimant introduces medical evidence showing that he has an ailment reasonably expected to produce some pain." *Id*. at 603.

At step two, after specific references to the record, ALJ Treblin found:

> In summary, the claimant's subjective complaints of pain, fatigue, dizziness, depression and physical limitations are not fully credible.  The claimant

1
2
3
4
5
6

testified that she drives her children to school every day, despite alleging that she
has seizures 2-3 times per week and she is debilitated by impairments.  Based on
her own testimony and the evaluation of Dr. Castillo, she is highly functioning
and has no limitations in her activities of daily living.  The records from her own
treating physician show that she is much improved.  Her complaints, including
pain, are disproportionate with and not supported by the objective and substantial
evidence in the record.  Although it is acknowledged that she experiences some
discomfort, the objective evidence of record establishes that she has an ability to
engage in work-related activities.  Her seizures and migraine headaches can all be
controlled with medication.

7   AR 32-33.  ALJ Treblin rejected Plaintiff's testimony as not fully credible because (1) it was

8   inconsistent and conflicted with her testimony; (2) she was not limited in her activities of daily

9   living; (3) the records of her treating physician indicated improvement; (4) the objective medical

10  evidence suggests Plaintiff is able to work; and (5) Plaintiff's seizures and headaches can be

11  controlled with medication.  Following a review of this record, this Court finds the ALJ's

12  determination regarding Plaintiff's credibility and subjective symptoms was proper.  *See, e.g.,*

13  *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (inconsistencies between the record and

14  medical evidence supports a rejection of a claimant's credibility); *Warre v. Comm'r of Soc. Sec.*

15  *Admin*., 439 F.3d 1001, 1006 (9th Cir. 2006) (impairments that are effectively controlled with

16  medication are not disabling); *Tidwell v. Apfel*, 161 F.3d 599, 601-602 (9th Cir. 1998) (finding a

17  mild or minor medical condition with all other tests reporting normal provides a basis for

18  rejecting claimant's testimony of severity of symptoms); *Orn v. Astrue*, 495 F.3d at 638 (the ALJ

19  may discount Plaintiff's credibility based on daily activities); *see also* 20 C.F.R. § 416.929

20  (objective medical evidence can be used in determining credibility; SSR 96-7p (objective

21  medical evidence is a useful indicator to assist in making a reasonable conclusion about

22  credibility and the ability to function).  ALJ Treblin provided specific, clear and convincing

23  reasons for finding Plaintiff less than credible.  *Mersman v. Halter*, 161 F.Supp.2d at 1086.

24       Finally, although evidence supporting an ALJ's conclusions might also permit an

25  interpretation more favorable to the claimant, if the ALJ's interpretation of evidence was rational,

26  as here, the Court must uphold the ALJ's decision where the evidence is susceptible to more than

27
28                                          11

1   one rational interpretation.  *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005).  Thus,

2   because there is evidence to support the ALJ's conclusion, even were one of the ALJ's reasons

3   erroneous or improper, the decision should be upheld.  *See eg., Batson v. Barnhart*, 359 F.3d

4   1190, 1197 (9th Cir. 2004) (upholding ALJ's credibility determination even though one reason

5   may have been in error).

6       **B.**     ***Evaluation of the Medical Evidence***[7]

7       Plaintiff contends the ALJ erred by failing to provide specific and legitimate reasons for

8   rejecting the opinion of treating physician Dr. Samuel Champaign.  Plaintiff also complains the

9   ALJ improperly omitted environmental limitations identified by Dr. Dane Chetkovick from his

10  RFC finding.  Further, she complains the ALJ erroneously relied upon the findings of Dr.

11  Manolito Castillo.  (Doc. 16 at 11-23.)

12      Cases in this circuit distinguish among the opinions of three types of physicians: (1) those

13  who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant

14  (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining

15  physicians).  As a general rule, more weight should be given to the opinion of a treating source

16  than to the opinion of doctors who do not treat the claimant.  *Winans v. Bowen*, 853 F.2d 643,

17  647 (9th Cir.1987).  At least where the treating doctor's opinion is not contradicted by another

18  doctor, it may be rejected only for "clear and convincing" reasons.  *Baxter v. Sullivan*, 923 F.2d

19  1391, 1396 (9th Cir. 1991).  Even if the treating doctor's opinion is contradicted by another

20  doctor, the Commissioner may not reject this opinion without providing "specific and legitimate

21  reasons" supported by substantial evidence in the record for so doing.  *Murray v. Heckler*, 722

22  F.2d 499, 502 (9th Cir. 1983).

23      The opinion of an examining physician is, in turn, entitled to greater weight than the

24  opinion of a nonexamining physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990);

---

[7]While this Court has identified Plaintiff's challenges regarding the medical evidence as separate arguments, Plaintiff herself did not.  Instead, her brief and its arguments are not well organized and often not clearly articulated.

1  *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984).  As is the case with the opinion of a treating

2  physician, the Commissioner must provide "clear and convincing" reasons for rejecting the

3  uncontradicted opinion of an examining physician.  *Pitzer*, 908 F.2d at 506. And like the opinion

4  of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor,

5  can only be rejected for specific and legitimate reasons that are supported by substantial evidence

6  in the record.  *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

7           The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence

8  that justifies the rejection of the opinion of either an examining physician or a treating physician.

9  *Pitzer v. Sullivan*, 908 F.2d at 506 n. 4; *Gallant v. Heckler*, 753 F.2d at 1456.  In some cases,

10 however, the ALJ can reject the opinion of a treating or examining physician, based in part on the

11 testimony of a nonexamining medical advisor.  *E.g., Magallanes v. Bowen,* 881 F.2d at 751-55;

12 *Andrews v. Shalala*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995).  For

13 example, in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating

14 physician, "the ALJ did not rely on [the nonexamining physician's] testimony alone to reject the

15 opinions of Magallanes's treating physicians . . .."  *Magallanes*, 881 F.2d at 752.  Rather, in

16 *Magallanes*, there was an abundance of evidence that supported the ALJ's decision: the ALJ also

17 relied on laboratory test results, on contrary reports from examining physicians, and on testimony

18 from the claimant that conflicted with her treating physician's opinion.  *Id*. at 751-52.

19              ***Dr. Champaign***

20    With regard to Plaintiff's treating physician, ALJ Treblin found:

21         The claimant is under primary care treatment with Dr. Champaign.  Dr.
     Champaign signed questionnaires submitted to him on two separate occasions.
22   (Exhibit 2E and 22F.)  The date of Exhibit 2E is unclear; Exhibit 22F is dated
     September 2006.  The handwriting and information between the two
23   questionnaires varies dramatically.  Both state that she cannot perform work at
     any exertional level.  Dr. [Champaign] documented her impairments on Exhibit
24   2E as headache, extreme fatigue, seizure disorder; on 22F he stated depression,
     seizure disorder, anxiety and panic with pain complaint.  The objective findings
25   upon which he bases these opinions are curious: low blood pressure-severe airway
     restriction on 2E versus "patient's relating experience of worrying repeatedly
26   about chest pain" on 22F.  Clearly, the claimant's subjective reports of her
     experiences are not objective findings.  Additionally, on 2E, Dr. [Champaign]

27

28                                              13

documented that she can sit for 45 - 90 minutes; however, on 22F in 2006 he documented that she can sit for eight to 16 hours a day.  Further, he described her seizures as epileptic grand mal (2E), which conflicts with her diagnosis from the neurologist Dr. Lewis and the claimant's own testimony.  Even Dr. [Champaign] observed that her seizures are, on average, three to six weeks apart.  Also of note is that on 2E her symptoms reportedly last for several weeks after a seizure ends; however, in 2006, he stated that her symptoms only last a couple of hours.  The undersigned attributes no weight to the diagnoses and opinions of Dr. Champaign because they conflict with neurologist Dr. Lewis[8], they are based on the claimant's subjective reports, they are internally inconsistent and there is no mention of a recommendation that the claimant cease driving, which she testified she does everyday.

AR 32.  Despite Plaintiff's assertions to the contrary, it is clear that the ALJ offered numerous specific and legitimate reasons to disregard Dr. Champaign's contradicted opinions.  *See Thomas v. Barnhart,* 278 F.3d 948, 957 (9th Cir. 2002) (an ALJ may reject the treating physician's opinion because it was based on the claimant's discredited subjective complaints); *Morgan v. Comm'r of the Soc. Sec. Admin*., 169 F.3d 595, 602 (9th Cir. 1999) ("A physician's opinion of disability 'premised to a large extent upon the claimant's own accounts of his symptoms and limitations' may be disregarded where those complaints have been 'properly discounted'") (quoting *Fair v. Bowen*, 885 F.2d at 605); *Roberts v. Shalala*, 66 F.3d at 184 (rejecting an opinion that contains internal inconsistencies is a specific and legitimate reason to discount the opinion; rejection of examining psychologist's functional assessment which conflicted with his own written report and test results); *see also Buckner-Larkin v. Astrue*, 2011 WL 4361652 (9th Cir. Sept. 20, 2011).

Further, this Court's review of the exhibits referenced within the ALJ's findings reveal no reason to sustain a challenge to the ALJ's finding.  *Cf.* AR 310-211 to AR 591-592.  Notably too, Dr. Champaign's most recent 2006 opinion is much less restrictive than the original.  Therefore, ALJ Treblin did not err by assigning little weight to Dr. Champaign's opinions.

//

---

[8]*See* AR 588-589; *see also* AR 585-587.

14

1

***Dr. Chetkovich***

2        Dr. Chetkovich's opinions are provided in the Complete Medical Report (Physical) and

3    Medical Assessment of Ability to Do Work-Related Activities (Physical) forms completed on

4    October 16, 2001.  *See* AR 362-366.

5        More particularly, Dr. Chetkovich indicated that he had treated Plaintiff from April 1,

6    2000 to October 15, 2001, for epilepsy and migraine headaches.  Asked to identify his clinical

7    findings, the doctor wrote "normal exam" and identified laboratory findings in the form of the

8    CT scan of Plaintiff's brain.  His diagnosis included "partial epilepsy" with a notation to "fair

9    control" and "migraine headaches, intractable."  Plaintiff's response to treatment was recorded as

10   "fair/poor" and her prognosis was reportedly fair.  AR 362.

11       Next, Dr. Chetkovich opined that Plaintiff was not affected by her impairments with

12   regard to lifting and carrying.  Specifically, the doctor indicated she could "continuously" lift up

13   to fifty pounds and occasionally lift between fifty-one and one hundred pounds.  Further, he

14   found that Plaintiff could "continuously" carry up to ten pounds, frequently carry eleven to

15   twenty pounds, and occasionally carry between twenty and one hundred pounds.  AR 363.  Dr.

16   Chetkovich indicated that Plaintiff's ability to sit, stand or walk was not affected by any

17   impairment, and neither was her ability to use her hands or feet.  AR 364.  In Dr. Chetkovich's

18   opinion, Plaintiff should never climb, but could continuously balance, stoop, crouch, kneel and

19   crawl.  Additionally, she could continuously reach, handle, feel, push/pull, hear and speak

20   without limitation.  AR 365.

21       When asked about environmental restrictions, Dr. Chetkovich indicated that Plaintiff was

22   restricted regarding heights, moving machinery, chemicals, noise, temperature extremes and

23   fumes, but he did not assign any specific limitation.  In other words, he did not provide an

24   opinion as to whether these restrictions involved avoiding all exposure, avoiding moderate

25   exposure, or avoiding concentrated exposure.  The doctor identified these restrictions as an

26   exposure that would worsen her migraine headaches.  AR 366.  However, Plaintiff was not

27

28                                                    15

restricted with regard to humidity, dust, or vibration, nor did the doctor identify "any other work-related activities . . . affected" by the impairments identified.  AR 366.

ALJ Treblin determined as follows:

> The claimant was evaluated by neurologist Dr. Chetkovich who diagnosed her with partial epilepsy and migraine headaches.  Dr. Chetkovich found that sitting, standing, walking were not affected by her impairments.  He noted that she could lift 20 pounds frequently and more than that occasionally.  He observed that she should never climb.  She should be restricted from heights, moving machinery, chemicals, noise, temperature extremes and fumes.  The undersigned attributes significant weight to the opinions of Dr. Chetkovich, as they take into account the claimant's overall condition.  The Disability Determination Services ("DDS") physician also took into account that the claimant should exercise seizure precautions including not working near machinery with moving parts and not driving.  Additionally, she should avoid concentrated exposures to fumes, odors, dusts, gases, poor ventilation, etc.

AR 32, internal citations omitted.

Plaintiff complains that while the "ALJ claimed to give weight to this opinion, [he] omitted or downplayed the environmental limitations from his residual functional capacity finding for no stated reason."  (Doc. 16 at 14-15.)  However, a review of the ALJ's RFC and Dr. Chetkovich's opinion reveals no such omission.  As noted elsewhere in these findings, the ALJ's RFC provides as follows regarding environmental limitations: "She should avoid climbing ladders, ropes, and scaffolds.  She should avoid all exposure to hazards such as moving machinery and unprotected heights.  She should avoid high concentrations of fumes, odors, dusts, gases, and poor ventilation."  AR 32.  In fact, ALJ Treblin's RFC finding is more restrictive than Dr. Chetkovich's restrictions, adding dusts and gases where Dr. Chetkovich identified no such restriction.  Moreover, an ALJ need not believe everything a physician sets forth, and may accept all, some, or none of the physician's opinions.  *Magallanes v. Bowen*, 881 F.2d at 753-754.  Accordingly, no error occurred.

### Dr. Castillo

With specific regard to Dr. Castillo's findings, the ALJ determined as follows:

> The claimant alleges that she suffers from depression; however, this is not a severe impairment.  The claimant underwent a consultative examination with

16

Dr. Castillo, a board certified psychiatrist.  . . . Dr. Castillo diagnosed her with major depressive disorder.  He assigned her a score of 70 on the Global Assessment of Functioning scale.  This score falls in the range of 61-70, which is described as some mild symptoms (*e.g.*, depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (*e.g.*, occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships.  Dr. Castillo commented that the claimant did well on assessment. He was unable to identify any significant mental limitations.  The undersigned attributes great weight to the opinions of Dr. Castillo as they are based on his clinical observations and the testing the claimant performed as part of the mental status examination.  They are also consistent with the record as a whole.

The claimant's representative submitted interrogatories to Dr. Castillo. The key question submitted to Dr. Castillo was why he diagnosed the claimant with major depressive disorder and then found that she had no mental health limits whatsoever.  Dr. Castillo's response was, "she herself reports that she is capable of preparing meals for her family, picking up her children from school, [and can] wash dishes, sweep, do laundry, drive, and handle her own finances. This is a description of someone who does not have significant limitations, and I relayed in the reports that I was unable to identify any significant mental limitations at present."  An additional interrogatory to Dr. Castillo inquired why someone with major depressive disorder, with poor concentration, depressed mood, tearfulness, poor math calculations, fearfulness, worry, poor sleep, and poor appetite with weight loss has no mental limitation?  Dr. Castillo responded that the adjectives relayed by the claimant's representative in his interrogatory were via her report.  Dr. Castillo reported that she was able to respond accurately when the math question was rephrased.  Dr. Castillo repeated the activities of daily living that the claimant reported she could do and commented that this is a description of someone who does not have significant limitations.  The undersigned attributes great weight to these interrogatory responses of Dr. Castillo because they are consistent with his report and examination of the claimant.

AR 27, internal citations omitted.

To begin, Plaintiff's argument regarding Dr. Castillo fails to cite to any supporting legal authority.  Nonetheless, the ALJ's reliance on Dr. Castillo's opinion is proper.  If a physician's opinion that is premised largely on a claimant's subjective complaints can be properly *disregarded*, then conversely, a physician's opinion that merely referenced, but did not rely upon, the claimant's reported symptoms can be properly *regarded*.  *See Morgan v. Comm'r of the Soc. Sec. Admin*., 169 F.3d at 602.  Morever, it has always been the case that an ALJ may properly rely upon the report of an examining physician where that physician conducted his own examination of the claimant, as occurred here.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th

Cir. 2001) (consultive examiner's opinion may constitute substantial evidence because it is based on examiner's independent findings and observations).

Further, a careful review of Dr. Castillo's report dated January 20, 2007, reveals no inadequacy.  With specific regard to his mental status examination, Dr. Castillo reported as follows:

> **ATTITUDE AND BEHAVIOR**: The claimant's posture, gait, and mannerisms were within normal range.  Social interaction with this evaluator was normal.  The claimant put forth good effort into the evaluation.  In general, claimant's speech was normal. The translator could understand 100% of the claimant's verbalizations.  Psychomotor activity was normal.  The claimant had good eye contact.
> **ORIENTATION/ATTENTION/MEMORY**: The claimant was oriented to the month, date, year and city of the evaluation.  The claimant was able to recall four digits forward and three digits backwards.  The claimant could not multiply 5 x $.25 accurately.  When the question was rephrased and the claimant was asked what 5 quarters were, she responded appropriately with $1.25.  The claimant's attention span was normal. The claimant was not easily distracted and needed no structure from this evaluator during the evaluation.  When tested further, the claimant was able to recite the days of the week in reverse.  The claimant could draw the face of clock correctly with the right time.  The claimant's memory was intact as she was able to recall three unrelated objects immediately and five minutes later. The claimant was able to recall adequate details regarding her personal history.
> **ABSTRACTIONS AND JUDGMENT**: When asked about similarities between and apple and an orange, the claimant stated, "Round."  The claimant would "ask for help" if this office were on fire.
> **AFFECTIVE STATUS**: The claimant described her mood to be depressed.  This evaluator observed her affect to be depressed as well as she was tearful. The claimant denies a history of suicidal ideation.  The claimant denies a history of homicidal ideation.
> **REALITY CONTACT**: The claimant's thought processes were organized.  History does not indicate hallucinations.  The claimant was not exhibiting florid psychotic behavior during today's interview.

AR 599-600.

After reciting Plaintiff's activities of daily living as personally reported, Dr. Castillo diagnosed a major depressive disorder.  AR 600.  Nevertheless, the mere diagnosis of an impairment is not sufficient to sustain a finding of disability.  *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).  Dr. Castillo went on to include the following medical source statement:

> The claimant did well on assessment.  As a result, I am unable to identify any significant mental limitations at present.  The claimant is also capable of

handling her own funds.  As for the claimant's health problems, an appropriate specialist should be consulted to help identify any physical limitations.

AR 600.  Thus, Plaintiff's unsupported assertion that the "examination [] performed was woefully inadequate" (Doc. 16 at 20) is belied by the record as Dr. Castillo's objective findings were all normal with the single exception of Plaintiff's affect.

In conclusion, Plaintiff's arguments with regard to the ALJ's reasoning for assigning weight to treating and examining physician opinions simply lack merit.  ALJ Treblin's decision is based upon proper legal standards and is supported by substantial evidence.

To the degree Plaintiff argues the ALJ should have considered her obesity, she is mistaken.  In *Burch v. Barnhart*, 400 F.3d 676, the Ninth Circuit distinguished its holding in *Celaya v. Halter*, 332 F.3d 1177 (9th Cir. 2003), and found no reversible error in an ALJ's failure to consider the claimant's obesity at multiple steps of the sequential evaluation process where: (i) the claimant was represented by counsel; (ii) the record did not indicate that the claimant's obesity exacerbated the claimant's other impairments, and (iii) the claimant failed to: (a) specify which listing the claimant believed the claimant met or equaled; (b) set forth any evidence which would support the diagnosis and findings of a listed impairment; and (c) point to any evidence of functional limitations due to obesity which would have impacted the ALJ's analysis.  *Burch v. Barnhart*, 400 F.3d at 682-84 (finding that the ALJ adequately considered plaintiff's obesity in his RFC determination and at various stages of the analysis, given that plaintiff had not pointed to "any evidence of functional limitations due to obesity which would have impacted the ALJ's analysis").  Similarly here, Plaintiff was represented by counsel, and the substantial record here does not indicate her obesity exacerbated her other impairments despite Plaintiff's single-page reference to testimony that "tension headaches are exacerbated by [being] overweight," and neither has Plaintiff identified with specificity which listing she has met or equaled, set forth any evidence which would support the diagnosis and findings of a listed

19

impairment, nor pointed to any evidence of functional limitations due to obesity which would

have impacted the ALJ's analysis.

### C.      *Lay Witness Testimony*

Next, Plaintiff argues that the ALJ erred by improperly rejecting the testimony of

Plaintiff's sister, Concepcion Anaya.  (Doc. 16 at 24.)  The Commissioner contends the ALJ

properly disregarded the questionnaire prepared by Plaintiff's sister.  (Doc. 19 at 10-11.)

Lay witness testimony as to a claimant's symptoms is competent evidence which the

Commissioner must take into account.  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).  The

ALJ may reject such testimony if he does so expressly, in which case "he must give reasons that

are germane to each witness."  *Id.*  The ALJ need not discuss lay witness testimony that pertains

to whether or not an impairment exists.  *Nguyen v. Chater,*  100 F.3d 1462, 1467 (9th Cir. 1996).

These medical diagnoses are beyond the competence of lay witnesses and therefore do not

constitute competent evidence.  20 C.F.R. § 404.1513(a).  However, once an impairment has

been established by medical evidence, the extent of the diagnosed impairment may be testified to

by the lay witnesses.  20 C.F.R. § 404.1513(e); *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir.

1987).

Here, the third party questionnaire at issue is dated June 21, 2000, and is marked Exhibit

1E18 through 1E23 in this record.  *See* AR 180-185.  In his original November 21, 2001,

findings, ALJ Daniel G. Heely found the "claimant's statements and those of her friend

concerning her impairments and their continued impact on her ability to work are not entirely

credible in light of discrepancies between the claimant's assertions and information contained in

the documentary reports and the reports of the treating and examining practitioners."  AR 85-86.

In its remand order of April 27, 2002, the Appeals Council remanded the matter, in part, on this

issue:

> The decision finds that the statements of the claimant and those of her
> friend concerning the claimant's impairments and their continued impact on her
> ability to work are not entirely credible in light of the discrepancies between the
> claimant's assertions and information contained in the documentary reports and

the reports of the treating and examining practitioners.  However, the decision does not identify [] the discrepancies that make the claimant and friend's statements not entirely credible.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

       Upon remand, the Administrative Law Judge will:

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

       Further evaluate the claimant's subjective complaints and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms . . ..

AR 94-95.  Following that initial remand, in his subsequent findings of September 25, 2003, ALJ

Heely stated as follows:

       Concepcion Anaya also completed a Daily Activities Questionnaire in June 2000 which reiterates the claimant's statements but adds that the claimant has "totally changed since she became ill[,] she has [distanced herself] from all family and friends[,] she is a different person who always look[s] tired." It is also noted that the claimant is able to care for her personal needs but is not as attentive about her personal appearance as in the past and while she prepares meals she tries not to stay in the kitchen long because she cannot be close to the heat for a long time and [that for] some of the meals she prepares enough to freeze for later meals.  The claimant's husband also reportedly helps the claimant around the house and with the shopping.

AR 52, internal citation omitted.  Despite Plaintiff's counsel's assertion that the "ALJ did not

comply with SSR 96-7p in assessing testimony" (AR 127), the Appeals Council did not remand

this matter a second time on this basis.  *See* AR 60-61.

       It is important to note that ALJ Treblin carefully considered all of the evidence before

concluding Plaintiff was not disabled.  AR 25.  Further, the Appeals Council did not remand the

matter on this basis and Ms. Concepcion Anaya's statement is not new evidence: it is dated June

21, 2000.  *See* AR 60-61.  In fact, in its February 2006 order, the Appeals Council specifically

remanded this matter for a new ALJ to make the following determinations:

       Upon remand the Administrative Law Judge will:

-    Obtain additional evidence concerning the claimant's nonepileptic seizures and headaches in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 416.912-913).  The additional evidence should include a consultative mental status examination with psychological testing and medical source statements about what the claimant can still do despite the impairments.

21

- If necessary, obtain evidence from a medical expert (neurologist and/or psychiatrist/psychologist) to clarify the nature and severity of the claimant's impairments.
- Further evaluate the claimant's mental impairment(s) in accordance with the special technique described in 20 CFR 416.920a, documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in 20 CFR 416.920a(c).
- Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 416.945 and Social Security Ruling 85-16 and 96-8p).
- Obtain supplemental evidence from vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 416.966). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

As this case was previously remanded to the same Administrative Law Judge, the Appeals Council directs that, upon remand, this case be assigned to another Administrative Law Judge.

AR 60-61. According to Title 20 of the Code of Federal Regulations section 416.1477(b), the "administrative law judge shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." The ALJ complied with the Appeals Council's remand order and was not required to take any further action.

Even assuming arguendo the Court found that the ALJ had erred by not providing a germane reason for disregarding Plaintiff's sister's third party statements, reversal is not required here. The Ninth Circuit has held that "where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the

testimony, could have reached a different disability determination." *Stout v. Commissioner*, 454

F.3d 1050, 1056 (9th Cir. 2006). This Court finds that even if ALJ Treblin had erred in failing to

fully credit Concepcion Anaya's testimony, any such error is harmless. In light of the record

below, even were Concepcion Anaya's testimony fully credited, no reasonable ALJ would have

reached a different disability determination. Finally, the same objective reasons given for

rejecting Plaintiff's own testimony (*see* subh. A, *ante*) support the decision not to fully credit her

sister's testimony. *Cf. Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006).

### D.    *Step Five Findings*

Lastly, Plaintiff asserts the ALJ erred by failing to meet his burden at step five "despite

being remanded twice by the Appeals Council." (Doc. 16 at 25.) The Commissioner replies that

the ALJ's step five finding was supported by substantial evidence and is thus proper. (Doc. 19 at

11.)

At step five of the sequential analysis, the RFC is an assessment of an individual's ability

to do sustained work-related physical and mental activities in a work setting on a regular and

continuing basis of eight hours a day, for five days a week, or equivalent work schedule. SSR

96-8p. The RFC assessment considers only functional limitations and restrictions which result

from an individual's medically determinable impairment or combination of impairments. SSR

96-8p. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the

record including, inter alia, medical records, lay evidence, and 'the effects of symptoms,

including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins*

*v. Social Security Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

"Hypothetical questions posed to the vocational expert must set out all the limitations and

restrictions of the particular claimant . . .." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).

The testimony of a VE "is valuable only to the extent that it is supported by medical evidence."

*Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982). The VE's opinion about a claimant's

RFC has no evidentiary value if the assumptions in the hypothetical are not supported by the

1  record. *Embrey v. Bowen*, 849 F.2d at 422.  However, an ALJ is only required to present the VE

2  with those limitations he finds to be credible and supported by the evidence. *Osenbrock v. Apfel*,

3  240 F.3d 1157, 1165-66 (9th Cir. 2001).

4          ALJ Treblin's RFC finding is as follows:

5              After careful consideration of the entire record, the undersigned finds that
       the claimant has the residual functional capacity to sit, stand and walk for 6 hours
6      each of an 8-hour workday with normal breaks.  She can lift 10 pounds frequently
       and 20 pounds occasionally.  She should avoid climbing ladders, ropes and
7      scaffolds.  She should avoid all exposure to hazards such as moving machinery
       and unprotected heights.  She should avoid high concentrations of fume, odors,
8      dusts, gases, and poor ventilation.  She can perform simple tasks at the unskilled
       level.

9

10  AR 29.  The hypothetical question upon which this RFC finding rests was presented to the VE

11  during the administrative hearing.  *See* AR 714-715.  Although Plaintiff takes issue with the fact

12  the ALJ did not incorporate every limitation sought by Plaintiff to be considered, that does not

13  amount to error.  The ALJ thoroughly explained why he concluded as he did, specifically

14  referencing the medical record.  *See* AR 29-34.  Clearly then, the ALJ's hypothetical question

15  pertaining to his RFC finding was based upon the limitations he found to be credible and

16  supported by the evidence.  *Osenbrock v. Apfel*, 240 F.3d at 1165-66.

17          Finally, Plaintiff asserts that the housekeeping and laundry worker jobs identified "are

18  particularly poor choices" given her "sensitivity to odors, such as cleaners, heat, light and noise."

19  (Doc. 16 at 25.)  However, a review of the descriptions provided for DOT 323.687-014[9] and

20  DOT 920.687-018[10] finds no support for Plaintiff's position.[11]  Notably too, Plaintiff herself

21

22          [9]Cleans rooms and halls in such commercial establishments as hotels, restaurants, clubs, beauty parlors, and
    dormitories performing any combination of the following duties: Sorts, counts, folds, marks, or carries linens. Makes
23  beds. Checks wraps and renders personal assistance to patrons. Moves furniture, hangs drapes, and rolls carpets.
    Performs other duties as described under CLEANER (any ind.) I. May be designated according to type of
24  establishment as BEAUTY PARLOR CLEANER (per. ser ); MOTEL CLEANER (hotel & rest.); or according to
    area cleaned as SLEEPING ROOM CLEANER (hotel & rest.).

25
           [10]Covers garments or household articles with plastic or paper bags by any of following methods: (1) Hangs
26  garment or article on stand and covers with plastic bag. (2) Pulls plastic from rolls, sliding plastic material over
    article and tearing plastic at perforations to form bag of desired size. (3) Hangs garment on holder in machine and
27  pulls plastic from roll to envelop garment. Pushes button or moves lever to close heating irons that cut and seal

28                                                      24

testified that she performs housekeeping duties and does the laundry.  *See* AR 710.  Lastly,
Plaintiff also claims the cashier position identified "is problematic given [her] illiteracy in
English and concentration and memory problems."  (Doc. 16 at 25.)  The ALJ properly found
Plaintiff was not limited with regard to concentration, persistence, pace or memory, and the
medical record substantiates this finding.  Moreover, regarding the illiteracy concern, the cashier
position was eroded by fifty percent to accommodate Plaintiff's education and language
limitations.  *See* AR 716.

In conclusion, the ALJ's findings at step five are supported by substantial evidence and
are free of legal error.

//
//
//
//
//
//
//
//
//
//
//
//
//

plastic to form bag of desired dimensions. Hangs bagged article on slide rail or rack. (4) Drops shirts or folded
articles into machine that automatically envelops articles in plastic bags and drops articles into box. Removes boxes
from beneath machine when filled and replaces boxes.

[11]In fact, the VE determined that Plaintiff could not perform her past relevant work due to the limitations or
restrictions regarding fumes, odors, dusts, gases and poor ventilation.  AR 715.

**RECOMMENDATION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, the Court RECOMMENDS that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be DENIED and that JUDGMENT be entered for Defendant Michael J. Astrue and against Plaintiff Leticia Anaya.

These findings and recommendations will be submitted to the Honorable Anthony W. Ishii pursuant to the provisions of Title 28 of the United States Code section 636(b)(l).  Within fifteen (15) days after being served with these findings and recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:    February 2, 2012**                      **/s/ Gary S. Austin**
                                                        UNITED STATES MAGISTRATE JUDGE